laPER CURIAM.
This action involves the involuntary termination of parental rights in connection with the determination of the availability of three minor children for adoption. On June 27, 1995, M.F.P. filed a motion and order for appeal from the judgment of May 30, 1995, terminating her parental rights to B.L.P. (DOB: 11-11-87), R.P. (DOB: 01-08-89), and A.P. (DOB: 01-04-86). On September 6, 1996, the State of Louisiana, Department of Social Services (DSS), Office of Community Services (OCS), filed a motion to dismiss the appeal, contending M.F.P. failed to file a brief setting forth issues or assignments of error on appeal. Also, on September 6,1996, court appointed counsel for M.F.P. filed a motion to continue seeking to have the hearing scheduled for September 10,1996, moved to a later date. Counsel argued the Juvenile Court failed to forward notice of this appointment to him and thus he had no knowledge of the pending matter. The court granted the motion and continued the hearing until September 24,1996.
In cases specially assigned for argument, the briefs shall be filed as ordered by the court. Uniform Rules — Courts of Appeal, 2-12.9. If the brief on behalf of any party is not filed by the date the brief is due, the party’s right to oral argument shall be forfeited. The court may also impose other sanctions including, but not limited to, dismissal of the appeal when the appellant does not file a brief. Uniform Rules — Court of Appeal, 2-12.12. Appellant’s brief was received by the court September 26, 1996. However, because the brief was post marked September 24, 1996, appellant’s brief was considered timely. Uniform Rules — Courts of Appeal, 2-14. The motion to dismiss is therefore denied.
On September 22, 1993, W.L.T., the alleged father of R.P. and A.P., executed a Voluntary Act of Surrender for Adoption in favor of DSS. DSS moved to obtain court approval of the surrender March 14, 1994. Court approval was granted April 8, 1994, and the Voluntary Act of Surrender was made retroactive to the date of execution.[1]
On March 10, 1994, a petition for termination of parental rights was filed by DSS alleging grounds for terminating the parental rights of M.F.P. were those enumerated in *971 La.Ch.C. art. 1015(3), (4), (5) and (7). DSS also sought termination of the parental rights of L.H., the l3father of B.L.P. alleging grounds for termination were those enumerated in La.Ch.C. art. 1015(8) and (9). DSS also alleged L.H. is unknown despite diligent efforts to locate him.[2]
La.Ch.C. art. 1015 provides in pertinent part:
The grounds set forth in the petition must meet all of the conditions of any one of the following Paragraphs:
(3) Other parental mistreatment
(a) The conduct of the parent, either as a principal or accessory,- constitutes abuse, neglect, or cruel and inhuman treatment or grossly negligent behavior which is below a reasonable standard of human decency.
(b) The parent is now unfit to retain parental control, and there is no reasonable expectation of his reformation in the foreseeable future.
(4) Prior adjudications as a child in need of care
(a) One year has elapsed since a child in need of care adjudication.
(b) The parent is unfit to retain parental control.
(c) The parent has shown no significant, substantial indication of reformation, and there is no reasonable expectation of his reformation in the foreseeable future.
(5) Prior adjudication as a child in need of care and removal irom the parental home
(a) One year has elapsed since a child was removed from the parent’s custody pursuant to a court order in a child in need of care proceeding and placed either in the custody of an agency or individual.
(b) The parent is now unfit to retain parental control, and there is no reasonable expectation of his reformation in the foreseeable future.
(c) The department has made every reasonable effort to reunite the child with his parents to no avail but now recommends that reunification would not be in the best interests of the child.
(7) Loss of custody due to the parent’s condition
(a) One year has elapsed since a court order placing the child in the custody of the department.
(b) The child was removed from the custody of his parents because of the parent’s mental illness, mental retardation, or substance abuse.
(e) The parent’s condition continues to render the parent unable or incapable of exercising parental responsibilities without exposing the child to a substantial risk of serious harm.
(d)Despite notice by the department, the parent has refused or failed to provide a plan for the appropriate care of the child other than foster care.
|4(e) Every reasonable effort has been made under the circumstances to rehabilitate the parent, and such efforts have failed.
(f) There is no reasonable expectation that the parent’s condition will change or that he will be rehabilitated in the foreseeable future.
(g) According to expert testimony or proof of an established pattern of behavior, termination of parental rights and adoption are in the child’s best interest.
La.Ch.C. art. 1003(10) defines “unfit” as behaviors or conditions of a parent:
(a) Who has abused a child by inflicting physical or mental injury which causes severe deterioration to the child, or who has sexually abused, exploited, or overworked a child to such an extent that his or her health or moral or emotional well-being is endangered.
(b) Who has consistently refused to provide reasonably necessary food, clothing, appropriate shelter, or treatment either by medical care or other health services in accordance with the tenets of a well-recognized religious method of healing with a *972 reasonable proven record of success. Financial inability alone shall not constitute grounds for termination of parental rights.
(c) Whose medical or emotional illness, mental deficiency, behavior or conduct disorder, severe physical disability, substance abuse, or chemical dependency makes the parent unable or unwilling to provide an adequate permanent home for the child at the present time or in the reasonably near future based upon expert opinion or based upon an established pattern of behavior.
B.L.P., R.P. and A.P. were initially placed in the legal custody of DSS by court order August 11, 1989 because of M.F.P.’s suspected physical and emotional neglect and her inability or refusal to care for the children. B.L.P., R.P. and A.P. were adjudicated “Children in Need of Care” August 14, 1989 in juvenile proceedings filed under Docket No. J63,679.
Sheila Price, an employee of the OCS, worked with M.F.P. from April of 1989 until April of 1991 as a ease manager. Ms. Price testified OCS received a report alleging neglect of B.L.P., R.P., and A.P. August 9, 1989. The report indicated M.F.P. had been observed drunk for two days, the children were hungry and dirty and the house was in a deplorable condition. After receiving the above information, Ms. Price visited the house and interviewed three witnesses. In talking with the witnesses, Ms. Price stated they indicated the children did not have food to eat in the home “but some of the neighbors would give the children food if they came by and ask [sic] for food.” Ms. Price stated that all of the complaints were validated.
The children were removed from M.F.P.’s custody in August of 1989 and returned in October of that same year. With M.F.P.’s permission, Ms. Price took photographs of the house upon the children’s removal and their return. Ms. Price testified that she did this to demonstrate |sto M.F.P. what she needed to do before her children would be returned. Ms. Price stated, although there was electricity at this address, there was no running water.
On June 6, 1990, OCS received another report indicating B.L.P., R.P. and A.P. were again being neglected. At this time, M.F.P. and the children were living in a much smaller house with no electricity or water. The children were again removed from M.F.P.’s custody and taken into care. Ms. Price testified, during the time she was M.F.P.’s case worker and the children were in the State’s custody, twenty-seven visits were scheduled for M.F.P. to see the children. Of the twenty-seven visits, M.F.P. kept twelve. Ms. Price stated the worker would “go out and pick her up, but she either would not be there — most of the time she was not at the home.” When asked, by counsel for M.F.P., if M.F.P. showed a continuing interest in her children during that time, Ms. Price stated “No.”
Angela Mitchell, an employee of DSS, assisted M.F.P.’s family as a ease worker from January of 1993 until December of 1993. Ms. Mitchell testified M.F.P. was advised of what her rights and responsibilities were in order for her to be reunited with her children. M.F.P. indicated she understood the reunification plan implemented and what services were offered in connection with that plan. M.F.P.’s case plan included attending parenting classes, submitting to a psychological evaluation, substance abuse counseling, visitation with her children and team conferences. M.F.P. attended one team conference, but gave no reason for not attending and or participating in the other services offered. Although M.F.P. has some mental limitations, and limited reading skills, Ms. Mitchell testified that she would go over what was required of M.F.P. with M.F.P.
Dorothy Jones, a former client service worker, helped M.F.P. get the children immunized, as well as, obtain housing, furniture and clothing. Ms. Jones testified she would periodically go over a chore list with M.F.P. However, on those occasions when Ms. Jones arrived at ten or eleven o’clock in the morning to assist M.F.P., M.F.P. was already drunk and the children were dirty. On those occasions, Ms. Jones testified M.F.P. would awaken and say “it’s time for me to feed the kids or whatever.” “Me” being, Ms. Jones. Ms. Jones testified she would take M.F.P. grocery shopping on Friday, but when she returned on Monday the food was gone and *973 the children were in the same condition as before. When asked if M.F.P. had an explanation as to why the house and or children were in the same condition, Ms. Jones testified | ethat at least fifty to sixty percent of the time she went there M.F.P. was already drunk or she had been drinking.
Whether there has been adequate proof that M.F.P.’s conduct constituted abuse, neglect or cruel and inhuman treatment, whether M.F.P. is unfit, showed no significant indication of reformation, is mentally ill, mentally retarded or a substance abuser and whether the State made every reasonable effort to reunite the children with her, are questions of fact.
On review, the factual findings of the court in determining whether the requirements of a particular paragraph have been satisfied will not be set aside in the absence of manifest error. State in the Interest of E.G., 95-0018 (La.App. 1 Cir. 6/23/95); 657 So.2d 1094, 1096, writ denied, 95-1865 (La. 9/1/95); 658 So.2d 1263.
The trial court found, after considering the complete record, testimony offered and the evidence introduced, it was in the best interest of these minor children to permanently terminate the parental rights of M.F.P.
After a thorough review of the record before us, we cannot say the trial court was manifestly erroneous (clearly wrong) in its determination that the allegations of the State’s petition, setting forth the grounds for involuntary termination of parental rights enumerated in La.Ch.C. art. 1015(3), (4), (5) and (7), were proven by clear and convincing evidence. Therefore, the trial court properly terminated M.F.P.’s parental rights as to B.L.P., R.P. and A.P.
For the foregoing reasons, the judgment of the trial court terminating the parental rights of M.F.P. in relation to B.L.P., R.P. and A.P. is affirmed. B.L.P., R.P. and A.P. are now eligible and available for adoption. M.F.P. is east for the costs of this appeal.
AFFIRMED.

. We note that an affidavit attesting to the waiver of mental health counseling is not attached to the Act of Surrender as required by La.Ch.C. art. 1120. However, no one is contesting the validity nor attempting to have the Act of Surrender declared null. Thus, because a surrendering parent loses the right to petition for the nullity of a surrender of parental rights after the passage of ninety days, the Act before us is valid and the parental rights of W.L.T. have been terminated. See State in the Interest of Taylor, 637 So.2d 512 (La.App. 1st Cir. 1993).

. The judgment of May 30, 1995,. also terminated the parental rights of L.H. as to B.L.P. L.H. has not appealed that judgment and thus that ruling is definitive.